# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

BETHANY A.,                              )
                                         )
    Plaintiff,                       )
                                         )
v.                                       )    Case No. CIV-25-60-SM
                                         )
FRANK BISIGNANO,                         )
COMMISSIONER                             )
OF SOCIAL SECURITY,                      )
                                         )
    Defendant.                       )

## MEMORANDUM OPINION AND ORDER

Bethany A.[1] (Plaintiff), seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to proceed before the undersigned for disposition. Docs. 8 & 9[2]; *see* 28 U.S.C. § 636(c).

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing that the Administrative Law

---

[1]    The Court refers to Plaintiff by first name and last initial only to protect Plaintiff's privacy because of the sensitive nature of medical and personal information disclosed in Social Security cases.

[2]    Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the administrative record (AR) will refer to its original pagination.

Judge (ALJ) failed to properly consider Plaintiff's extreme fatigue and her symptoms of extreme fatigue. Doc. 10, at 10-22.

After careful review of the administrative record (AR), the parties' briefs, and the relevant authority, the Court agrees the ALJ committed error that requires it to reverse and remand the Commissioner's decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

# I.    Administrative determination.

## A.    Disability standard.

Plaintiff applied for disability benefits and supplemental security income under the Social Security Act. AR 14; *see* 42 U.S.C. §§ 401, *et seq.*, 1381, *et seq.*

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

**B.    Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff "retains the capacity to perform" a different type of work and that such a "specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)).

**C.    Relevant findings.**

**1.    ALJ's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 17-38; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step framework). The ALJ found Plaintiff:

(1)    had not engaged in substantial gainful activity since September 30, 2022, the alleged onset date;

(2)    has the severe medically determinable impairments of arthritis; polyarthralgia; peripheral neuropathy; chronic migraine headaches; diabetes mellitus type 2; obstructive sleep apnea; obesity; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder; and attention deficit hyperactivity disorder;

(3)     had no impairment or combination of impairments that met
        or medically equaled the severity of a listed impairment;

(4)     had the residual functional capacity[3] (RFC) to perform
        medium work as defined in 20 C.F.R. §§ 404.1567(c),
        416.967(c) with the following exceptions: she can
        understand, remember, and carry out only simple
        instructions; maintain attention and concentration for no
        longer than two-hour blocks; occasionally interact with
        supervisors, coworkers, and the general public; use
        judgment to make only simple work-related decisions;
        perform only occasional production rate work (assembly
        line/hourly quota work); and tolerate only occasional
        changes in the work setting;

(5)     could not perform any past relevant work;

(6)     was an individual of advanced age on the alleged disability
        onset date;

(7)     jobs exist in significant numbers in the national economy
        that Plaintiff can perform; namely counter supply worker,
        Dictionary of Occupational Titles (DICOT) 319.687-010;
        kitchen helper, DICOT 318.687-010; and cleaner II, DICOT
        919.687-014;

(8)     had not been under a disability from September 30, 2022,
        through July 24, 2024.

AR 17-38.

---

[3]     "[R]esidual functional capacity is the most [a claimant] can still do
despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a).

2.    **Appeals Council's findings.**

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, "making the ALJ's decision the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011); *see* 20 C.F.R. §§ 404.981, 416.1481.

## II.    Judicial review of the Commissioner's decision.

### A.    Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). "An agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax*, 489 F.3d at 1084 (defining substantial evidence as "more than a scintilla, but less than a preponderance"); *Wall*, 561 F.3d at 1052 (explaining that "'[e]vidence is not substantial if it is overwhelmed by other evidence in the record'" (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005))). The Court "will

not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards, may under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quotations omitted). This Court "consider[s] whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett,* 395 F.3d at 1172). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

**B.     The ALJ's consideration of Plaintiff's extreme fatigue and its symptoms.**

Plaintiff contends that the ALJ erred in considering her fatigue impairments and symptoms for two reasons: he failed (1) to recognize her fatigue-causing impairments of long COVID and Epstein-Barr Virus; and (2) to properly apply SSR 16-3p because he pointed out no inconsistencies between her symptoms and the medical record. Doc 10, at 12.

**1.     The ALJ's consideration of long COVID and Epstein-Barr virus.**

The ALJ recognized the following assertions concerning long Covid and Epstein-Barr virus:

- June 2022 fatigue since having COVID in January 2022, AR 26;

- Plaintiff had COVID in July 2022, *id.* at 33;

- In August 2022, Plaintiff questioned if brain fog was a residual COVID symptom, *id.* at 26;

- In December 2022, Dr. George Tardibono said that Plaintiff's laboratory results "produced a positive Epstein-Barr panel," and suggested "it could explain her severe fatigue complaints," *id.* at 27;

- In February 2023, Erica Elliot, MS, LPC, described Plaintiff "to endorse[] marked and persistent symptoms from COVID infections, and a multitude of other chronic symptoms," *id.* at 32;

- In October 2023, Dr. Aikaterini Thanou no longer included "long Covid and Epstein-Barr virus" on Plaintiff's "list of impressions," (which were included in July 2023), and the ALJ concluded that "there is no definitive evidence of a diagnosis or of symptoms from Epstein-Barr, long COVID . . . or any other inflammatory or autoimmune condition," *id.* at 30-31;

- In December 2023, Dr. Tardibono noted "differential diagnoses includ[ing] long Covid versus chronic Epstein-Barr virus versus chronic fatigue syndrome," *id.* at 30;

- In January 2024, Plaintiff asserted symptoms from Epstein-Barr and long COVID, *id.* at 31;

- In February 2024, Plaintiff asserted she had "been recently diagnosed with chronic Epstein-Barr virus and chronic fatigue, and stressed again that her doctor suspected long COVID," *id.*;

- "In March 2024, [Plaintiff's husband] submitted a written statement, in which he asserted [that Plaintiff's] mental and

8

physical health had declined dramatically over the last four years"
in part due to "long COVID . . . and Epstein-Barr virus," *Id.* at 23;

- At a May 2024 hearing, Plaintiff stated that she has chronic
  Epstein-Barr syndrome, *id.* at 24.

### 2. The ALJ's conclusions about medically determinable impairments.

Plaintiff maintains the ALJ mistakenly concluded that her symptoms
related to long Covid and Epstein-Barr virus were not medically determinable
impairments, whether severe or nonsevere. Doc. 10, at 13. And he concluded
that "there is no definitive evidence of a diagnosis of or symptoms from
Epstein-Barr, long COVID . . . or any other inflammatory or autoimmune
condition." AR 31.

She maintains the conclusion that no diagnoses of these conditions
existed was incorrect. Doc. 10, at 13. While acceptable medical sources may
have noted these diagnoses, the ALJ rejected these conclusions as not
persuasive. AR 31-33. As the Commissioner points out, her fatigue lessened
with consistent use of the CPAP machine. Doc. 15, at 5-6 (citing AR 27, 28, 29).
In discounting Plaintiff's consistency, the ALJ considered her activities, her

treatment, her medications, and her adherence to prescribed medicine. AR 27-29.[4]

### C. The ALJ failed to adequately consider Plaintiff's consistency.

Plaintiff argues that although the ALJ acknowledged her complaints of constant exhaustion from fatigue, he discredited her consistency. Doc. 10, at 16-21. After considering her function reports, the third-party function report her husband submitted, the hearing testimony and arguments, and Plaintiff's described daily activities, the ALJ reached this boilerplate conclusion:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 24.

---

[4]    Because the Court determines remand is required below based on Plaintiff's related argument, it need not address Plaintiff's challenge to the ALJ's opinion on this basis. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (declining to address other issues raised on appeal after concluding that the ALJ's error had "affected the disability analysis as a whole"); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

1.    **The consistency analysis.**

The ALJ's credibility analysis is otherwise termed the consistency analysis. *See* SSR 16-3p, 2017 WL 5180304, at *2 n.1 (explaining use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of [a claimant's] character."). "Credibility is the province of the ALJ." *Hamilton v. Sec'y of Health & Hum. Servs. of U.S.*, 961 F.2d 1495, 1499 (10th Cir. 1992). An "ALJ's credibility findings warrant particular deference" thanks to the ALJ's "institutional advantage": he can "observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted). But this requirement is satisfied without "a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

First, the ALJ considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *See* SSR 16-3p, 2017 WL 5180304, at *3. The ALJ's next step was to determine whether Plaintiff's statements about the intensity, persistence, and limiting effects of

her symptoms were consistent with the objective medical evidence, statements from medical sources, and any other sources that might have information about her symptoms. *Id.* at *6. Additional factors for the ALJ to consider were: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, Plaintiff has received; (6) any measures other than treatment Plaintiff uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions. *Id.* at *7-8; *see also* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). Statements the ALJ finds inconsistent with all the evidence will lead to a determination that "the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *8.

In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability, the ALJ considers four elements: "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).

2.    **The ALJ's failure to apply the *Frey* factors.**

Plaintiff maintains the ALJ mainly faulted her (and in turn doubted the legitimacy of her long COVID and Epstein-Barr virus symptoms) for being noncompliant with her CPAP prescription. Doc. 10, at 7 (citing AR 26, 28, 34). And that in so doing, the ALJ neglected to consider the *Frey* factors. *Id.* at 17-20. The Court agrees the primary reason the ALJ relied on in discounting her fatigue and related symptoms was Plaintiff's struggle to comply with her CPAP prescriptions. *Id.* at 17 (citing AR 26: noting Plaintiff "was not using a CPAP machine"; "did not use her CPAP"; 27: Plaintiff claimed she was "incapable of using the CPAP" "because of claustrophobia and night terrors"; and noting her "refusal to use a CPAP"; 28: "she refused to use the CPAP"; 34: finding Plaintiff was "resistant to treatment" including her prescribed CPAP). The ALJ also noted Plaintiff's improved resolution of symptoms with nightly use of her CPAP. AR 19 (noting Plaintiff "endorsed significant improvement" of symptoms such as daytime fog, sleep apnea, migraines).

The ALJ here did not fully consider whether the treatment would restore Plaintiff's ability to work and whether her reluctance or refusal to abide by the CPAP routine was justifiable.

In this case, it may well be that a consideration of the relevant evidence under the *Frey* factors would lead the ALJ to make precisely the same findings

about Plaintiff's subjective claims and symptoms. But the ALJ must undertake this analysis, as it is the ALJ (not the court) who must weigh the evidence in the first instance. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (noting post hoc rationalization would require the court to "overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process").

Although the ALJ tied his consistency findings to some specific evidence in the record, neither that evidence nor Plaintiff's ability to perform some daily activities, provides substantial evidence to support the ALJ's conclusion.

## III.    Conclusion.

Based on the above, the Court reverses and remands the Commissioner's decision.

**ENTERED** this 11th day of July, 2025.


SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

14